# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

THOMAS GROSS, on his own behalf
and on behalf of all similarly situated
individuals,

    Plaintiff,

v.                                                    Case No. 8:18-cv-01755-T-02CPT

CONCORDE, INC.,
a Foreign For-Profit Corporation,

    Defendant.
_____/

## **ORDER**

This matter comes to the Court on Defendant Concorde, Inc.'s Motion to Dismiss Amended Complaint and Strike Class Allegations, Dkt. 35, and its Motion to Temporarily Stay Discovery Pending Resolution of Jurisdictional Motion to Dismiss Amended Complaint, Dkt. 36. Plaintiff Gross has filed responses in opposition to both motions. Dkts. 45, 46. The Court DENIES Defendant's Motion to Dismiss. The Motion to Temporarily Stay Discovery is DENIED as moot. The Case Management and Scheduling Order is amended to allow for individual discovery on Plaintiff's personal claims by May 10, 2019. Dispositive motions pertaining to those claims are due by May 30, 2019.

## BACKGROUND

As alleged in the Amended Complaint, in 2016 Plaintiff applied for employment with Advanced Disposal Service, Inc. (ADS). Dkt. 25 ¶ 24. As part of the application process, ADS obtained a consumer report with Plaintiff's information prepared by Defendant, a credit reporting agency (CRA). *Id.* ¶ 25. To this end, ADS presented Plaintiff with an electronic form titled "Fair Credit Reporting Act Disclosure Statement and Authorization." *Id.* ¶ 26. This form, electronically signed by Plaintiff on October 31, 2016, included an Acknowledgement and Authorization as follows:

> [I] acknowledge receipt of A SUMMARY OF YOUR RIGHTS UNDER THE FAIR CREDIT REPORTING ACT. I authorize [ADS and Defendant] to make lawful inquiries, including of my prior employers, and other entities and persons to verify my suitability for employment. This may include requests for information regarding my criminal, civil, and motor vehicle records. I authorize the release of this information by any prior employer and anyone else having information or documentation about me to [ADS and Defendant]. I authorize [Defendant] or other consumer reporting agencies to provide consumer and investigative consumer reports to [ADS]. . . .

Dkt. 35-1 at 2.

ADS offered employment to Plaintiff. Dkt. 25 ¶ 32. That offer was later rescinded based upon the consumer report eventually provided by Defendant. *Id.* ¶ 34. According to Plaintiff, ADS did not provide him with pre-adverse action notice as required by 15 U.S.C. § 1681b(b)(3) of the Fair Credit Reporting Act (FCRA),

*id.* ¶ 35, nor was the disclosure form a "stand-alone" document in accord with § 1681b(b)(2), *id.* ¶ 26. Plaintiff also complains that Defendant did not obtain ADS's certification of compliance with those requirements. *Id.* ¶ 35.

In his Amended Complaint, Plaintiff brings one count titled "Failure to Obtain Certification Prior to Furnishing a Consumer Report for Employment Purposes in Violation of 15 U.S.C. § 1681b(b)(1)(A)." Dkt. 25 at 13. He alleges a willful violation because Defendant "provided consumer reports about Plainitff, which [were] used for employment purposes, without the user's certification of compliance with the disclosure, authorization and notification requirements set forth in 15 U.S.C. § 1681b(b)(2) and § 1681b(b)(3)." Dkt. 25 ¶ 68. Plaintiff further alleges Defendant "invaded Plaintiff's privacy by compiling Plaintiff's personal, private and sensitive information into a consumer report for employment purposes, and furnishing said consumer reports without a permissible purpose." *Id.* ¶ 69.

Plaintiff also asserts a claim on behalf of a class defined as "[a]ll employees and job applicants in the United States who were the subject of a consumer report furnished by [Defendant] for employment purposes that was provided without the user's certification of compliance with 15 U.S.C. § 1681b(b)(2) and 15 U.S.C. § 1681b(b)(3), within five years of the filing of this complaint through the date of final judgment in this action." *Id.* ¶ 59. Defendant moves to dismiss for lack of Article III and statutory standing under Rules 12(b)(1) and 12(b)(6) of the Federal

Rules of Civil Procedure. Dkt. 35 at 3. It also moves to strike the class allegations for certain putative class members pursuant to Rule 23. *Id.*

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citation omitted). When considering a Rule 12(b)(6) motion, the court accepts all factual allegations of the complaint as true and construes them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008) (citation omitted). Courts should limit their "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted).

A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Serv., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009) (citation omitted). Because Defendant presents matters outside the pleadings, Defendant seeks a factual attack on jurisdiction. *Id.*

## DISCUSSION

Plaintiff has sufficiently alleged an injury for standing purposes. Designed to ensure "fair and accurate credit reporting" and that CRAs "exercise their grave

responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy," 15 U.S.C § 1681(a), the FCRA provides:

> A consumer reporting agency may furnish a consumer report for employment purposes only if--
> **(A)** the person who obtains such report from the agency certifies to the agency that--
> **(i)** the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and
> **(ii)** information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation . . . .

§ 1681b(b)(1). To lawfully procure a consumer report, paragraph (2) requires "a clear and conspicuous disclosure . . . in writing to the consumer . . . in a document that consists solely of the disclosure" and the consumer's authorization in writing. § 1681b(b)(2)(A). Paragraph (3) requires any person intending to take adverse action based on the report to provide to the consumer a copy of the report and a description in writing of the rights of the consumer. § 1681b(b)(3)(A).

Based on the allegations of the Amended Complaint, Defendant violated the FCRA by not obtaining ADS's certification that ADS would comply with paragraphs (2) and (3). The FCRA states that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer." § 1681n(a). The statute also provides liability for negligent noncompliance. § 1681o.

5

Defendant first argues that the FCRA does not create a private cause of action for a violation of § 1681b(b)(1), yet cites no on point, persuasive authority for the proposition. Dkt. 35 at 20-23. Rather, Defendant's alleged violation appears to fall squarely within the statute's remedy provision. Defendant's noncompliance was still "with respect to" Plaintiff, though the relevant provision required it to obtain certification from ADS, not Plaintiff. *See Sanders v. Glob. Radar Acquisition, LLC*, No. 2:18-CV-555-FTM-99CM, 2019 WL 118044, at *3 (M.D. Fla. Jan. 7, 2019).

But this does not end the Court's task: Plaintiff must still establish Article III standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation."). This threshold inquiry requires a plaintiff to show he has "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* at 1547 (citations omitted). Only the first two elements seem in dispute.

I.       An Injury in Fact

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (citation omitted). "Particularized" means that the injury "must affect the plaintiff in a

personal and individual way." *Id.* (citations omitted). A "concrete" injury, meanwhile, must be "de facto; that is, it must actually exist," or in other words, "real, and not abstract." *Id.* (citations and internal quotation marks omitted).

In *Spokeo*, the U.S. Supreme Court noted the possibility that a "violation of one of the FCRA's procedural requirements may result in no harm." *Id.* at 1550. The line between a procedural violation and a concrete harm is not yet clearly defined in the Eleventh Circuit and there is no binding precedent on § 1681b(b)(1).[1] In his Notice of Supplemental Authority, Plaintiff directs the Court to a recently decided § 1681b(b)(1) case from this district that did find an injury for standing purposes. Dkt. 52; *Sanders*, 2019 WL 118044.

As here, the *Sanders* plaintiffs sued a CRA for not obtaining certification of FCRA compliance from the employer after the employer acted adversely against the plaintiffs without notice. *Id.* at *2. The court observed that "the injuries alleged . . . are not mere 'procedural' statutory violations; rather, they are precisely a kind of harm the FCRA aims to prevent. Namely, the distribution of consumer reports without the proper, required disclosures." *Id.* at *5. The court found that this constituted a particularized and concrete injury. *Id.*

---

[1] In its brief, Defendant cites to cases from outside this circuit that have ruled that noncompliance with the subsection does not satisfy Article III. *See* Dkt. 35 at 14-15.

In so deciding, the court in *Sanders* looked to the U.S. Court of Appeals for the Eleventh Circuit's treatment of *Spokeo* in *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016), an unpublished Fair Debt Collections Practices Act (FDCPA) case. *Id.* at *4. The defendant in *Church* allegedly failed to include certain disclosures in a letter to an individual as required by the FDCPA. *Church*, 654 F. App'x at 991. In finding standing, the appellate court reasoned that "through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures." *Id.* at 994. The court distinguished the possibility of a "bare procedural violation" left open in *Spokeo* by noting that "Congress provided [the plaintiff] with a substantive right to receive certain disclosures and [she] has alleged that [the defendant] violated that substantive right." *Id.* at 995 n.2.

Arguably, the Eleventh Circuit has receded from *Church* in later cases such as *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016) where a New York law required a certificate of discharge to be recorded in a timely manner. *Id.* at 1000-01. The court held that the plaintiff's failure to allege a harm caused by a violation, such as loss of money or damaged credit, precluded Article III standing. *Id.* at 1003. The appellate court clarified that the inquiry does not end at whether

the statute at issue created a substantive right that was violated; the question remains whether that violation caused concrete harm. *Id.* at 1002-03.²

The more recent *Muransky v. Godiva Chocolatier, Inc.*, 905 F.3d 1200 (11th Cir. 2018) demonstrates that the issue remains in flux. The case concerned a merchant's failure to truncate credit card numbers on a receipt in violation of the Fair and Accurate Credit Transactions Act, an amendment to the FCRA. *Id.* at 1208. The court examined the "history and the judgment of Congress," and whether any resulting harm from a violation "bears a 'close relationship' to causes of action recognized at common law." *Id.* (citation omitted). Indeed, the improper disclosure of credit card numbers is similar to the common law tort of breach of confidence, the harm of which "happens when the plaintiff's trust in the breaching party is violated." *Id.* at 1209 (citation omitted). The court went on to note that even "[t]ime spent safely disposing of or keeping the untruncated receipt is, of course, a small injury, but it is enough for standing purposes." *Id.* at 1211 (citation omitted); *see also Pedro v. Equifax, Inc.*, 868 F.3d 1275, 1279-80 (11th Cir. 2017) (finding Article III standing for FCRA report of inaccurate information claim where the harm is analogous to publication of defamatory information); *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1340-41 (11th Cir. 2017) (finding

---

² *See also Riley v. United Parcel Serv. of Am., Inc.*, No. 6-17-CV-00254-PGB-DCI, 2017 WL 8312366 (M.D. Fla. Oct. 2, 2017) (distinguishing *Church* in FCRA case); *LaFollette v. RoBal, Inc.*, No. 1:16-CV-2592-WSD, 2017 WL 1174020 (N.D. Ga. Mar. 30, 2017) (same).

Article III standing for violation of Video Privacy Protection Act that implicates invasion of privacy).

Whether this case is more similar to invasion of privacy or, as in *Muransky*, breach of confidence, the FCRA protects against the dissemination of even accurate information to an inappropriate recipient. Though Defendant argues Plaintiff's allegations of invasion of privacy are conclusory, Plaintiff claims that Defendant furnished Plaintiff's private information to ADS in contradiction to the FCRA's mandate and he was thereby harmed. Plaintiff further alleges that, based on that information, ADS took an unwarned adverse action against him. Because the violation concerned Plaintiff's information and his employment application, the alleged injury was moreover particularized to Plaintiff.

Taking the allegations as true and in a light most favorable to Plaintiff, this is sufficient to pass the motion to dismiss stage. Whether this is true when Plaintiff "can no longer rest on 'mere allegations'" at summary judgment remains to be seen. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 975-76 (11th Cir. 2005).[3]

II. Fairly Traceable

The harm as alleged is also fairly traceable to Defendant. As mentioned above, it was Defendant that disclosed Plaintiff's private information without the

---

[3] In reaching its decision, the Court sees no need to rely upon Plaintiff's case against ADS pending elsewhere, at least at this stage. Though consideration of the evidence might be allowed on a factual attack on standing, the intent of ADS seems of little consequence to the question of whether Defendant's violation of the certification process resulted in a harm (as alleged) for Article III purposes.

necessary certification. If this were not enough, that required certification was designed to prevent ADS's alleged violations of § 1681b(b)(2) and (b)(3). In finding the "fairly traceable" element satisfied, the *Sanders* court observed that "the FCRA does not limit a consumer's private right of action to those offenders with whom consumers have direct contact." *Sanders*, 2019 WL 118044, at *13; *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) ("[E]ven a showing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement."). The Court agrees. Based on his allegations, Plaintiff has standing.

III. Class Allegations

Defendant lastly urges the Court to strike the claims of the putative class "as soon as practicable." Dkt. 35 at 23. Defendant clarifies it does so to "avoid any possible assertion of delay because both arbitration and personal jurisdiction defenses can be waived." *Id.* n.12. This request encompasses members who might be bound to individual arbitration or who reside out-of-state. *Id.* at 24.

Defendant's assertion is duly reflected in the record. The Court has already denied Defendant's motion to dismiss in order to develop a fuller record on Plaintiff's personal claims.

As such, discovery is permitted solely as it relates to this Plaintiff's claims. The parties are free to revisit the issue of standing and jurisdiction for Plaintiff at

summary judgment. Should Plaintiff's personal claims survive challenges to standing or the merits on the basis of evidence, the Court will then permit class-relevant discovery.

## CONCLUSION

The Court DENIES Defendant's Motion to Dismiss the Amended Complaint. Dkt. 35. The Motion to Stay Discovery is DENIED as moot. Dkt. 36. Discovery may proceed with respect to only Plaintiff's personal claim. There will be no class discovery at this time. The bona fides of Plaintiff's claim and factual basis of his standing should be heard in a summary judgment posture. Individual discovery as to this Plaintiff's case is to be completed by May 10, 2019. Dispositive motions pertaining to Plaintiff's claim are to be filed by May 30, 2019. The Court will rule on any such motions in an expedited manner. Once these issues are resolved, class-relevant discovery may be permitted by later order. The Case Management Schedule will be so adjusted.

**DONE AND ORDERED** at Tampa, Florida, on January 29, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record